# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: ENFORCEMENT OF A SEIZURE ORDER BY THE COURT OF APPEALS OF PARIS, COURT OF HIGH INSTANCE, FRANCE TO RESTRAIN:<br><br>ONE BAG OF FOREIGN CURRENCY; $108,215.00 IN U.S. CURRENCY FOUR LUXURY VEHICLES; VARIOUS PIECES OF EXPENSIVE JEWELRY SEIZED BY AND HELD IN THE CUSTODY OF THE LOS ANGELES COUNTY SHERIFF'S OFFICE AS A RESULT OF A STATE COURT CASE, CASE NO. 16 LAT0194 | Case No. |

## APPLICATION OF THE UNITED STATES
## TO ENFORCE AND REGISTER FOREIGN RESTRAINING ORDER
## PURSUANT TO 28 U.S.C. § 2467(d)(3)(A) AND 18 U.S.C. § 983(j)(1)(A)

The United States of America, by and through its undersigned attorneys, respectfully submits this application for entry of an order pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18 U.S.C. § 983(j)(1)(A). The application seeks to enforce in part a March 14, 2017 foreign seizure order issued by the Court of Appeals of Paris, Court of High Instance, France to restrain assets in a case involving a fraud and money laundering scheme conducted by Fabrice Touil and Richard Touil pursuant to the Mutual legal Assistance treaty between the United States and France.[1] The order seizes assets belonging to Fabrice Touil. As explained below, the Assets found in the U.S.

---

[1] *See* Treaty with France on Mutual Legal Assistance in Criminal Matters, U.S.-Fr., Dec. 10, 1998, T.I.A.S. 13010 (2001); *see also* Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union Signed 25 June 2003, as to the Application of the Treaty with France on Mutual Legal Assistance in Criminal Matters Signed 10 December 1998, U.S.-Fr., Sept. 30, 2004, S. Treaty Doc. No. 109-13 (2006) (reaffirming and amending the 1998 bilateral MLAT between the U.S. and France) (the "Treaty").

are currently in the custody of the Los Angeles County Sherriff's Department pursuant to a seizure warrant issued by the Superior Court of the State of California in (*the matter of the Search Warrant at 2666 Hutton Drive, Beverly Hills, California 90210*, Case No. 16 LAT0194). As described below, some of the assets listed in the French Court's order were subsequently returned to the possession of the defendant to use to post an appearance bond pursuant to agreements by the parties in France approved by the French Court and honored by the California court. Also, the three bags of cash sought to be restrained in the French order have been deposited into a Trust account controlled by the Sheriff at Bank of America, Account Number xxxxxx-0346. A complete list of assets the United States seeks to restrain and currently held by the LA Sherriff's Department as well as a list of additional assets restrained in the French Seizure Order but no longer in the United States are set forth below.

As explained below, the United States seeks expedited treatment of this application, because a motion for return of property by the Touil's proceeding in California state court under which the remaining assets are being held by the Sheriff could result in a ruling as early as October 19, 2018 under which the assets could be released. Therefore, the assets the French court seeks U.S. assistance to restrain could be removed from the US or concealed from US authorities. Therefore an order from this Court based upon the relevant Treaty between France and the United States is needed to preserve the properties for forfeiture under French law.

I. **APPLICATION**

The United States seeks a restraining order pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18 U.S.C. § 981(j)(1) to preserve the properties that will be subject to forfeiture in France to fulfill its treaty obligations to France. The March 14, 2017 French Court's Seizure Order has been certified for enforcement by the Assistant Attorney General of the U.S. Department of Justice's

Criminal Division in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). See Exhibit 1. The United States applies to this Court to issue an order restraining the assets that are the subject of the French Court's Seizure Order which will become effective when and if the Los Angeles Sheriff's Department in California releases its possession of these assets.

## II.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to 28 U.S.C. § 2467(c)(2)(B), which provides, in the relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which . . . the property that may be the basis for satisfaction of a judgment under this section may be found." The assets sought to be restrained are currently the subject of a pending California state court matter styled as *in the matter of the Search Warrant at 2666 Hutton Drive, Beverly Hills, California 90210*, Case No. 16 LAT0194 which involves a seizure by the Los Angeles Sheriff's Department pursuant to a search warrant signed by Judge Robert J. Schuit at Superior Court of the State of California. As stated, a motion for return of this property has been filed by the person who had possession of these items at the time of the search. Because a California state court has acquired jurisdiction over the property, care should be taken when asking a federal court to assert *in rem* jurisdiction involving the same asset. Under the "concurrent jurisdiction doctrine," only one sovereign may exercise jurisdiction over a res at one time, and the first court to obtain jurisdiction over a res maintains it until it is relinquished. *See Madewell v. Downs*, 68 F.3d 1030, 1041 n.11 (8th Cir. 1995) (it is well established that only one court may have jurisdiction over the res at a time; the first court to obtain in rem jurisdiction maintains it until it is relinquished). Accordingly, under Section 2467, the United States is asking this court to assert *in rem* jurisdiction over the assets only after the state court relinquishes

jurisdiction over the assets now held by the Sherriff which are restrained under the French order. If there are any claimants, they will be submitting themselves to *in personam* jurisdiction of the court to pursue their claims. The United States makes this request to permit the United States to provide the requested mutual legal assistance under the treaty if the state court relinquishes its jurisdiction. A federal court may issue orders that anticipate a state court will release property either to the United States or to the property owner, so that the property may be seized/restrained by the federal agency as soon as the state court relinquishes its control over it. Such orders are called anticipatory seizure warrants or anticipatory restraining orders.[2] Title 18, United States Code, Section 983(j), which is incorporated specifically into Section 2467, *see* 28 U.S.C. § 2467(d)(3)(A)(ii), expressly permits this Court to issue any order that authorizes "any other

---

[2] *See United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 660-61 (6th Cir. 2003) (concurrent jurisdiction doctrine does not bar federal court from exercising in rem jurisdiction over property that state court has released to the claimants after state prosecutors failed to commence a forfeiture action within the deadlines specified by state law); *United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720 (S.D.N.Y. 1996) (district court cannot exercise in rem jurisdiction until state court relinquishes it), *Motion for reconsideration granted*, 937 F. Supp. 249, 252-53 (S.D.N.Y. 1996) (court may grant anticipatory seizure warrant so Government can seize property as soon as state court relinquishes it); *United States v. One Parcel Property Lot 85*, 100 F.3d 740, 743 (10th Cir. 1996) (initiation of federal civil forfeiture action does not violate concurrent jurisdiction rule as long as property is not actually seized until after state action is dismissed); *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 478-479 (2d Cir. 1992) (federal court may exercise jurisdiction over property under federal forfeiture law once it is released by state court and re-seized by federal authorities; state court's order releasing property has no effect on federal forfeiture); *United States v. One Black 1999 Ford Crown Victoria Lx*, 118 F. Supp. 2d 115, 118-19 (D. Mass. 2000) (because only one court may exercise in rem jurisdiction over property at a time, federal court may not exercise jurisdiction while state forfeiture action is pending; but once state court rules that property must be released and the order is obeyed, state jurisdiction evaporates and property may be re-seized and made subject to forfeiture under federal law; following *Jeep Wrangler*); *United States v. $3,000,000 Obligation of Qatar National Bank*, 810 F. Supp. 116, 117-19 (S.D.N.Y. 1993) (federal court, though "second in time," may proceed to judgment, assert a lien that will result in seizure of the asset only upon release from state jurisdiction, but stay execution of the judgment until federal jurisdiction is perfected). In addition, the Supreme Court has upheld the use of anticipatory warrants in other contexts. *See United States v. Grubbs*, 547 U.S. 90, 96, 97-98 (2006).

action to seize, secure, maintain, or preserve the availability of property subject to . . . forfeiture. . . ." abroad and this should include an anticipatory restraining order. 18 U.S.C. § 983(j)(1).

### III. FACTUAL BACKGROUND

On August 2, 2016, the United States filed an *Ex-Parte* application in the U.S. District Court for the District of Columbia to enforce the thirteen French Restraining Orders against U.S. real properties. *In re Restraint of Twenty Real Properties in California and Florida owned or controlled by Fabrice Touil or Richard Touil*, 1:16-mc-01612, Doc. 2 (the "2016 Application"). On August 16, 2016, this Court enforced ten of the thirteen French Court's restraining orders. *Id.* Doc. 3. The instant action stems from the same criminal conduct perpetrated by the same criminal defendants being prosecuted in France, which gave rise to the United States' 2016 Application. Since then the same French Court has issued an additional Seizure Order for the assets seized pursuant to the California State court's warrant in connection with and around the time of Fabrice Touil's arrest[3] in California on July 19, 2016.

Since the facts in support of the instant application are identical to those in the 2016 Application, the United States submits this brief application along with a copy of the previous more detailed application filed with this Court. *See* 2016 Application attached hereto as Exhibit 2. The French Seizure Order sought for enforcement through this application affects no new person, but simply covers newly-discovered U.S. assets owned by Fabrice Touil.

According to the French authorities, the proceeds of Fabrice Touil's frauds are estimated

---

[3] Fabrice Touil was arrested on June 19, 2016, by U.S. law enforcement agents, at his home in Beverly Hills, California. He waived his rights to challenge his extradition and was ordered extradited to France by the U.S. District Court for the Central District of California on July 26, 2016. He was transported to France on August 3, 2016, to face charges of fraud and money laundering. Richard Touil is a fugitive and is suspected by French authorities to be living in Israel.

5

to be approximately € 30 million (or approximately $34.5 million USD). If Fabrice Touil is ultimately convicted in France, the entire criminal proceeds would be subject forfeiture under French law. The total value of assets identified and restrained by France, including those already restrained and sought for seizure in the United States, is significantly less than € 30 million, so enforcement of this order against assets remaining in the United States will not result in seizures of assets in excess of legal limits. The United States seeks to enforce the March 14th French Order against only the subset of restrained assets listed below:

Assets Against which the United States Seeks to Enforce the March 14, 2017 Order:

1. One bag of foreign currency seized on July 19, 2016, by federal agents at Fabrice Touil's residence located at 2666 Hutton Drive, Beverly Hills, California 90210, on the day of his arrest, numbered A402376.

2. $108,215.00 in U.S. currency at the Los Angeles Sheriff's Trust Fund Account at Bank of America, Account Number xxxxxx-0346.

3. One vehicle owned or controlled by Fabrice Touil described as:

| Description | Vehicle Identification Number | License Plate |
|---|---|---|
| Make: Bentley Sedan<br>Model: Mulsanne<br>Color: Black<br>Year: 2013 | SCBBB7ZH7DC01 8393 | 7ECG761 |

4. One vehicle owned or controlled by Fabrice Touil described as:

| Description | Vehicle Identification Number | License Plate |
|---|---|---|
| Make: Mercedes<br>Model: S550<br>Color: Black<br>Year: 2014 | WDDUG8CB0EA026 | 18062V1 |

5. One vehicle owned or controlled by Fabrice Touil described as:

| Description | Vehicle Identification Number | License Plate |
|---|---|---|
| Make: Range Rover<br>Color: Black | SALGS2EFXDA100536 | 7BPG077 |

| | | |
|---|---|---|
| Year: 2013 | | |

6. One vehicle owned or controlled by Fabrice Touil, or its cash equivalent, described as:

| Description | Vehicle Identification Number[4] | License Plate |
|---|---|---|
| Make: Ferrari<br>Model: California<br>Color: Black<br>Year: 2010 | ZFF65LJA0A0173721 | 6YFH239 |

7. Twenty-five watches owned or controlled by Fabrice Touil, seized on July 19, 2016, by federal agents at Fabrice Touil's residence located at 2666 Hutton Drive, Beverly Hills, California 90210, on the day of his arrest, and further described as:

| | |
|---|---|
| Watch 1 | Men's Rolex Daytona, white metal |
| Watch 2 | Men's Rolex Daytona, white metal |
| Watch 3 | Men's Bulgari Diagono Professional, yellow metal |
| Watch 4 | Men's Rolex Daytona, yellow metal |
| Watch 5 | Men's Audemars Piguet Royal Oak, white metal |
| Watch 6 | Men's Rolex Daytona, yellow metal |
| Watch 7 | Men's Audemars Piguet Royal Oak<br>Color: Copper |
| Watch 8 | Men's Patek Philippe Geneve, white metal |
| Watch 9 | Men's Rolex Sky Dweller, white metal |
| Watch 10 | Men's Rolex Oyster, white metal |
| Watch 11 | Men's Rolex Oyster, yellow |

---

[4] The English translation of the French seizure order misstates the VIN for this asset as "ZFF65LJA**D**A0173721." The original French Seizure Order is controlling, which correctly states the VIN as "ZFF65LJA**0**A0173721." In the alternative, this vehicle is specifically identified by its license plate in the French Court's March 14th order.

7

|  |  |  |
|---|---|---|
|  |  | metal |
|  | Watch 12 | Men's Bulgari Carbongold<br>Color: Black |
|  | Watch 13 | Men's Rolex Deep Sea, white metal, in green box |
|  | Watch 14 | Men's Audemars Piguet Royal Oak Offshore<br>Color: Black |
|  | Watch 15 | Men's Audemars Piguet Pride of Argentina, white metal |
|  | Watch 16 | Men's Audemars Piguet Royal Oak, white metal |
|  | Watch 17 | Men's Rolex Milgauss, white metal |
|  | Watch 18 | Men's Audemars Piguet HNR<br>Color: Black |
|  | Watch 19 | Men's Rolex Yacht Master II, white metal |
|  | Watch 20 | Men's Rolex Sky Dweller, yellow metal |
|  | Watch 21 | Men's Rolex Daytona, white metal |
|  | Watch 22 | Men's Audemars Piguet Royal Oak Concept<br>Color: Copper |
|  | Watch 23 | Men's Audemars Piguet HNR<br>Color: Black |
|  | Watch 24 | Men's Richard Mille RM035 with black case<br>Color: Black |
|  | Watch 25 | Men's Audemars Piguet Millenary<br>Color: Black |

8. Two pieces of jewelry owned or controlled by Fabrice Touil, seized on July 19, 2016, by federal agents at Fabrice Touil's residence located at 2666 Hutton Drive, Beverly Hills, California 90210, on the day of his arrest, and further described as one Cartier bracelet (white gold with diamonds) and one Cartier bracelet (yellow gold with diamonds).

<u>Additional Assets Restrained in the French Court's March 14, 2017 Order But Not Included in the Proposed Order:</u>

1. All funds from the following accounts owned or controlled by Fabrice Touil at Bank

of America, N.A.,[5]:

    A. xxxxxx2295 held by Fabrice Touil
    B. xxxxxx2210 held by Fabrice Touil
    C. xxxxxx6046 held by Real Estate 26 Investments LLC
    D. xxxxxx5458 held by Emett9 LLC

2. All the funds from the following accounts owned or controlled by Fabrice Touil at Wells Fargo Bank, N.A.,

    A. xxxxxx7411 held by Fabrice Touil
    B. xxxxxx2810 held by Limousines 26 Express LLC[6]
    C. xxxxxx2992 held by Limousines 26 Express LLC

3. An Apple Watch, white metal, with brown Hermes band having serial no. FH7QCCYXGR81[7].

The United States advises this court that it does not seek to enforce the March 14th French Court's Order against the funds formerly maintained at the above-referenced accounts at Bank of America and Wells Fargo Bank and the Apple Watch described above, identified in the French order because they are no longer in the United States.

## IV. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28

---

[5] These bank accounts at Bank of America and Wells Fargo Bank in the United States were already closed and the funds removed prior to the filing of the instant application.

[6] Limousines 26 Express LLC is a limited liability company registered under California law. Its sole manager/member is Fabrice Touil and it shares a naming convention with other companies known to be controlled by Fabrice Touil such as Real Estate 25 Investments, LLC.

[7] According to the LA Sheriff's Office, this item was returned to France as evidence.

U.S.C. § 2467(d)(3)).[8] Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) of Title 18 do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

---

[8] The statute now clearly authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i) (2012).

10

Certification by the U.S. Attorney General or her authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. *See* Exhibit 3, DOJ Order No. 2820-2006. The AAG's determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## V. DISCUSSION

### A. The French Seizure Order Meets the Requirements For Enforcement Under § 2467(d)(3)(A)

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is any reason to believe the foreign order was obtained by fraud, *id.*[9] For the same reasons that were outlined in the prior application attached as Exhibit 2, and as set forth below, the requirements for enforcement of the March 14th French Seizure Order are met. Therefore, entry of the proposed

---

[9] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

anticipatory U.S. restraining order is both necessary and appropriate to preserve the property for eventual forfeiture in France.

### 1. Agreement on Forfeiture Assistance

First, the U.S. and France are parties to a Mutual Legal Assistance Treaty that entered into force on December 10, 1998. Under article 11 of that Treaty, the United States is obligated to assist France in forfeiture matters, including by taking protective measures to immobilize suspected criminal proceeds and instrumentalities.

### 2. Attorney General Certification

Second, the March 14, 2017 French Seizure Order was certified by the Acting Assistant Attorney General on December 20, 2017. The AAG, in certifying the orders, acknowledged that he has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the order came, and has concluded that enforcement of the foreign restraining orders, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *See* Ex. 1, AAG Certification.

### 3. Due Process

Third, the French Seizure Order dated March 14, 2017, was issued consistent with due process. According to the French Code of Criminal Procedure, art. 706-148, the Orders must be communicated to the owners of the affected properties after they are executed. *See the 2016 Application*, 1:16-mc-01612, Doc. 2 at 14. Art. 706-148 authorizes an appeal against any order to be brought within ten days of notification, which would not have the effect of suspending the order, but would allow the challenger (the owner or a third party) to access the exhibits related to the orders and to be heard by the investigating chamber. *Id.* at 14-15. This Order concerns only the property owned or controlled by Fabrice Touil, and seized in connection with Fabrice Touil's

arrest in California. Fabrice waived extradition and has been already extradited back to France to stand trial, and therefore received actual notice of the seizure. His counsel have filed the motion for return of property with the California State court that issued the seizure warrant for the property which is the subject of this application. The French authorities have advised us that the trial of Mr. Fabrice in which he participated in person has been concluded and that a verdict is expected in late February 2019. Accordingly, we infer that Fabrice Touil has received notice of the French Court's order but in any case he will receive notice of the French order and this Court's order issued by the United States, if this Court enters the proposed order.

In addition, as stated in the prior application, under French Penal Code, art. 131-21-9, confiscation of criminal proceeds and property of corresponding value (similar to the "substitute assets" forfeiture theory in the United States) under French law may be ordered for offenses punishable by at least one year in prison, and the confiscation can affect all property owned by the convicted person. *Id.* at 15. Pursuant to French Penal Code, art. 324-9-12 & 324-9-8, the penalty for money laundering—one of the charges against Fabrice—includes "confiscation of some or all of the property of the convicted person, of whatever type, movable or immovable, whether jointly or separately owned" and "confiscation of the object which is the product of [the offense]." *Id.* French Penal Code, arts 313-7-4 and 131-21-3 authorize similar forfeiture authority for a VAT fraud conviction. *Id.*

4. <u>Subject Matter Jurisdiction</u>

Fourth, French authorities have represented that the Court of Appeals of Paris, Court of High Instance, is the proper authority to issue the March 14, 2017 Seizure Order because it is the Court to which the judge in charge of the investigation in this matter is attached, and a conspiracy investigation in France can be carried out wherever one or more material actions

of the conspiracy took place. Here, numerous acts of the organized gang took place in Paris.5.

Absence of Fraud

Fifth, taking into account the presumption of regularity in foreign proceedings and the facts known to the United States, there is no reason to believe that March 14, 2017 French Seizure Order was obtained by fraud on the part of French authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

B.      Dual Forfeitability Is Satisfied.

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States at the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is required when enforcing a foreign restraining order and deciding that the United States satisfied the requirement), *with In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17, 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that

applies to final orders of forfeiture . . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if and when France asks the United States to enforce a confiscation judgment and the United States applies to enforce such a final judgment.

Here, dual forfeitability would be satisfied. If Fabrice Touil's criminal conduct had occurred in the United States, he could be charged with identity theft or fraud, under, for example, 18 U.S.C. § 1028(a)(7) (criminalizing the knowing transfer, possession or use "without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law"). Fabrice Touil's criminal conduct charged under French law, could also constitute wire fraud under 18 U.S.C. § 1343, or interstate or foreign transportation of more than $5,000 taken by fraud under 18 U.S.C. § 2314, and money laundering under 18 U.S.C. §§ 1956 or 1957. Fabrice could also be charged in the United States with bank fraud because he knowingly executed a "a scheme or artifice to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1344. Each of these offenses are specified unlawful activities for the purposes of the money laundering statutes, which carry their own forfeiture authority as described above, and both statutes also have independent forfeiture authority. *See* 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes or is derived from proceeds traceable to an identity theft or bank fraud violation); § 982(a)(2)(A)-(B) (criminal forfeiture of any property constituting or derived from proceeds obtained as the result of a violation of either statute). Any

property involved in a violation of 18 U.S.C. § 1956 or 1957 is also subject to forfeiture pursuant to 18 U.S.C §§982(a)(1) and 981(a)(1)(A).

    C.    <u>This Court Should Act to Enforce the French Restraining Orders by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).</u>

The March 14, 2017 Seizure Order entered by the Court of Appeals of Paris, Court of High Instance, reflects the intention of the Government of France to seek asset forfeiture should the criminal case against Fabrice Touil result in conviction. Thus, the United States, in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order against the suspects' U.S. assets.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the French Seizure Order—to "preserve the availability of property . . . subject to forfeiture" for the duration of the foreign criminal and confiscation proceedings. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings). As such, this Court should recognize the Seizure Order issued by the Court of Appeals of Paris, Court of High Instance, France and enforce it by its terms.

**VI.    CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court enforce the attached French Seizure Order, consistent with United States' obligations under the bilateral treaty, by entering the attached proposed restraining order pursuant to this Court's authority under 28 U.S.C. §§ 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1)(A) which provides it will become effective when and if the California State court relinquishes its jurisdiction over the assets. The United States will promptly provide those individuals and entities affected by this Court's order, including, but not limited to, the French defendants and

16

the parties in the state action, with notice of this proceeding and a copy of the both U.S. and French orders.

                Deborah Connor, Chief
                Money Laundering and Asset Recovery Section
                Criminal Division
                United States Department of Justice

By: _____
     MARY K. BUTLER
     International Unit, Chief
     mary.butler@usdoj.gov
     JENNIFER WALLIS
     Trial Attorney
     jennifer.wallis@usdoj.gov
     U.S. Department of Justice
     Criminal Division
     Money Laundering and Asset Recovery Section
     1400 New York Avenue, N.W., 10100
     Washington, D.C. 20530
     Telephone:  (202) 514-1263

     Attorneys for Applicant
     UNITED STATES OF AMERICA